Patricia SINISCALCHI, et al.

v.

SHOP–RITE SUPERMARKETS, INC.

Civ. A. No. 94–30133–MAP.

United States District Court,
for the District of Massachusetts.

Aug. 23, 1995.

Charles R. Casartello, Jr., Pellegrini & Seeley, Springfield, MA, for Patricia Siniscalchi.

Richard J. Maloney, Thomas E. Shirley, Choate, Hall & Stewart, Boston, MA, for Shop–Rite Supermarkets, Inc.

Charles R. Casartello, Jr., Pellegrini & Seeley, Springfield, MA, for Diane Adams, Patricia Arsenault, Norman Bach, Carolyn Bailey, Gary Baillargeon, Joyce Baker, Cheri Baranowski, Rose Bartusewich, Venetia Beach, Kristina Beaudry, Joseph Bennis, Debra Blanchard, Patricia Cabana, Diane Carlson, Linda Carrier, Denise Carvone, Annette Chevalier, Joan Churchill, Tina Marie Courchesne, Janice Czuchra, Mary D'Angelo, Linda DeJordy, Patricia Delmonte, David Delpeschio, Theresa Deroin, Connie Desmarais, Elaine Dionisi, Jane Dobrowski, Rhea Duprat, Rolande Emond, Kevin Farias, Robert Farias, Steven Farias, Robert Farman, Joseph Fontaine, Mary E. Fontaine, Carol Ganoe, Edmond Garde, Cheryl Garrity, Rosemary Guinard, Barbara Guindon, Nancy Gwozdz, Wendy Hobson, Willie Jenkins, Susan Kazalski, Kevin Kelliher, Lisa Kelliher, Hendrika Keser, Joan Kudla, Suzanne Labonte, Marguerite Lacost, Ellen Lapointe, Madeline Larocque, Kathleen Leal, Judith A. Lemon, Linda Letellier, Dorothy Lukasik, Carol Marowski, Brent McCauley, Eloise McDevitt, Joanne McLaughlin, Idella McManus, Georgia Monroe, Kevin Morris, Gail Mourad, John Nelson, Jr., Patricia O'Connor, Marlene Owczarski, Theresa Paul, Carol Pimental, Richard J. Poulin, Gloria Rae, Roger Raymond, Annmarie Redman, Alane Renaud, Susan Santanella, Beverly Secondo, Loretta Soule, Whitney C. Stiles, Jr., Roger Tatro, Renee Tetrault, Florence Thompson, Elizabeth Vickers, Richard Walowicz, Sandra Walowicz.

*MEMORANDUM REGARDING DEFEN-
DANT'S MOTION TO DISMISS
AND/OR FOR SUMMARY JUDG-
MENT AND PLAINTIFFS' MOTIONS
FOR PARTIAL SUMMARY JUDG-
MENT* (Docket Nos. 5, 7 & 26)

PONSOR, District Judge.

Plaintiff Patricia Siniscalchi and others have brought this action as a result of their alleged improper termination from the employ of the defendant Shop–Rite Supermarkets, Inc. as of December 31, 1992. The crux of the case is whether the defendant provided proper notice of termination to the plaintiffs under 29 U.S.C. §§ 2101–2109, the Worker Adjustment and Retraining Notification Act ("WARN"). Defendant moved to dismiss Counts I and III, which were presented under the WARN statute, and to dismiss and/or for summary judgment on Counts II and IV, offered as ERISA claims.

Plaintiffs for their part also moved for summary judgment on Count I of their complaint. Both the defendant's motion and the plaintiffs' motion for partial summary judgment were referred to Magistrate Judge Neiman for Report and Recommendation. In opposing the defendant's motion to dismiss, the plaintiffs agreed to the dismissal of the ERISA claims, Counts II and IV. See Report and Recommendation (Docket No. 23) at 4 n. 2. These two counts will therefore be dismissed and defendant's motion will be denied as moot.

Magistrate Judge Neiman recommended denial of the defendant's motion to dismiss Counts I and III, which was anchored entirely on the argument that the limitations period for filing any WARN claim had expired. Defendant initially objected to this recommendation, but subsequently withdrew its objection in light of the Supreme Court's decision in *North Star Steel Co. v. Thomas,* — U.S. —, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995). The defendant's motion to dismiss as to these two counts will therefore be denied.

Magistrate Judge Neiman also recommended that the plaintiffs' motion for summary judgment as to Count I be allowed. Defendant has maintained that WARN's remedy provision requires the award of back pay damages for each day of violation based solely on *work* days, rather than *calendar* days. Cases exist on both sides of this issue, but the court finds the Third Circuit's contrary decision in *United Steelworkers v. North Star Steel Co.,* 5 F.3d 39 (3rd Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994), to be the more persuasive. The court will therefore allow plaintiffs' motion for partial summary judgment as to Count I.

Subsequent to the issuance of Magistrate Judge Neiman's Report and Recommendation, the plaintiffs, at Magistrate Judge Neiman's suggestion, filed a motion for partial summary judgment with regard to Count III. Precisely the same issues exist with regard to this count as with Count I, as the defendant's opposition to this motion for summary judgment confirmed. Because the court has granted partial summary judgment as to Count I, the court will also grant partial summary judgment as to Count III. It should be noted as to both counts that the court's grant of summary judgment applies only to the question of liability and not to damages.

In conclusion, the plaintiff's motions for summary judgment as to Counts I and III are hereby allowed, on the issue of liability only. Counts II and IV are dismissed without prejudice and defendant's motion to dismiss and/or for summary judgment on these two counts is denied as moot. The defendant's motion to dismiss Counts I and III is denied. The clerk will set a date for a case management conference to establish a schedule for completion of all further proceedings in this case.

A separate order will issue.

*REPORT AND RECOMMENDATION RE-
GARDING PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDG-
MENT (Docket No. 07) AND DEFEN-
DANT'S MOTION TO DISMISS (Dock-
et No. 05)*

March 22, 1995

NEIMAN, United States Magistrate Judge.

## I. INTRODUCTION

This action arises from the termination of Plaintiffs Patricia Siniscalchi and others from

the employ of Defendant Shop–Rite Supermarkets, Inc. on December 31, 1992. The terminations occurred as a result of the Defendant's sale of the supermarket stores in which Plaintiffs worked. The present motions involve a dispute over whether the Defendant provided proper notice of termination to Plaintiffs under 29 U.S.C. §§ 2101–2109, the Worker Adjustment and Retraining Notification Act ("WARN"). Plaintiff Siniscalchi filed a Motion for Partial Summary Judgment on Count I of her complaint, claiming that the Defendant failed to provide the requisite notice sixty days prior to its shut-down of the West Springfield store where she worked. In turn, Defendant filed a Motion to Dismiss Counts I and III of Plaintiffs' complaint, claiming that the statute of limitations bars these counts. Both motions hinge on the proper statute of limitations to apply to Plaintiffs' claims under WARN.

The motions have been referred for a report and recommendation pursuant to Rule 3 of the Rules of United States Magistrates in the United States District Court for the District of Massachusetts. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends denying Defendant's Motion to Dismiss and granting Plaintiffs' Motion for Partial Summary Judgment on Count I.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Shop–Rite owned and operated supermarket stores in western Massachusetts. On November 3, 1992, Shop–Rite company officials gathered its employees, including Plaintiffs, for a meeting. Company officials disclosed that the stores in which Plaintiffs were working would close on December 31, 1992. A notice dated November 2, 1992, was distributed at the meeting,

which explained that the store closings were anticipated to be permanent. The Defendant's notice purported to comply with the provisions of WARN.[1] The store closings were, in fact, plant closings or mass layoffs subject to the requirements of WARN.

In accord with its notice, Shop–Rite ceased operations at its western Massachusetts locations on December 31, 1992. Plaintiff Siniscalchi worked at Defendant's West Springfield store until November 27, 1992, and received pay until December 31, 1992. Plaintiff Siniscalchi was not a member of a collective bargaining unit. None of the Plaintiffs worked for Shop–Rite after December 31, 1992, and all were paid through that date.

On June 1, 1994, Plaintiff Siniscalchi filed a three-count complaint seeking damages for violations of federal and Massachusetts law arising out of her termination. The complaint alleged a WARN violation for untimely notice (Count I), a denial of benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA") (Count II), and a failure to provide benefits pursuant to M.G.L. ch. 149, §§ 183–184, the "Tin Parachute Law" (Count III). The complaint was amended on September 1, 1994, to add the Plaintiffs' group, at which time the following substantive amendments were made as well: (1) the elimination of the former Count III in light of the decision in *Simas v. Quaker Fabric Corp. of Fall River*, 6 F.3d 849 (1st Cir.1993), where the Court declared the Tin Parachute Law preempted by ERISA; (2) the addition of a claim for WARN violations for each of the additional Plaintiffs (Count III); (3) the addition of a claim that the Plaintiffs' group was denied ERISA benefits (Count IV); and (4) the addition of a claim by all of the Plaintiffs alleging breach of contract by Shop–Rite by failing to provide certain benefits. (Count V).[2]

---

1. In applicable part, WARN provides as follows:

 An employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order—(1) to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee; and (2) to the State dislocated worker unit (designated

or created under Title III of the Job Training Partnership Act [29 U.S.C.A. § 1651 et seq.]) and the chief elected official of the unit of local government within which such closing or layoff is to occur.

29 U.S.C. § 2102(a).

2. Defendant's Motion to Dismiss also sought dismissal of Plaintiffs' ERISA claims in both Counts II and IV. Plaintiffs have since stipulated to the

### III. DISCUSSION

#### A. Motion to Dismiss

 Defendant's Motion to Dismiss Counts I and III is based solely on its assertion that the appropriate statute of limitations period for WARN claims has expired. A motion to dismiss is designed to test the legal sufficiency of the particular count in the complaint to which the motion is addressed: "The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Calero–Colon v. Betancourt–Lebron, et al.,* 1995 WL 35758 (D.Puerto Rico 1995), citing *Festa v. Local 3 International Brotherhood of Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990). A motion to dismiss requires the Court to accept "the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992); see also *Pihl v. Massachusetts Dep't of Educ.,* 9 F.3d 184, 187 (1st Cir.1993).

 The appropriate inquiry on a motion to dismiss is whether, based on the allegations of the complaint at issue, the plaintiffs are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). If the complaint is sufficient to state a cause of action in accordance with the law under any theory, the court must deny a motion to dismiss. *Wehringer v. Powers & Hall,* 874 F.Supp. 425 (D.Mass. 1995) and *Vartanian v. Monsanto Co.,* 14 F.3d 697, 700 (1st Cir.1994), both citing *Knight v. Mills,* 836 F.2d 659, 664–65 (1st Cir.1987). The First Circuit Court of Appeals has indicated that it will affirm a dismissal for failure to state a claim only if it clearly appears, according to the facts alleged, that the claimant cannot recover on *any* viable theory. *Rumford Pharmacy, Inc. v. City of East Providence,* 970 F.2d 996, 998 (1st Cir.1992).

As the Defendant acknowledges, WARN does not contain any reference to a statute of limitations. Defendant simply asserts that the Court should borrow the six-month statute of limitations in the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), and dismiss Plaintiffs' WARN claims as untimely. After conducting an exhaustive analysis, however, the Court has concluded that the six-month statute of limitations of the NLRA should not be borrowed, that a six-year statute of limitations should instead apply to claims brought in Massachusetts pursuant to WARN, and that the Defendant's Motion to Dismiss should be denied.

#### 1. Methodology

 When Congress does not include a statute of limitations in a federal statutory cause of action, the courts are to presume that Congress intended for an analogous state limitations period to apply. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 356, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321, 331 *reh'g denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). The Supreme Court explained that this rule of borrowing a state limitations period is founded on the Rules of Decision Act, 28 U.S.C. § 1652, which has been in existence long enough for courts to assume that Congress ordinarily intends by its silence that they borrow state law. *Id.*

 Despite the general rule, there is a limited exception: if a state limitations period is at odds with the purpose of the federal law, the court should ignore the state limitations period and instead borrow the most analogous federal limitations period. *DelCostello v. International Bd. of Teamsters,* 462 U.S. 151, 161, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983). This exception, however, is "closely circumscribed" and tends to succumb to the general rule that state rather than federal limitations periods apply when Congress does not specify a limitations period for a federal statutory cause of action. *Lampf,* 501 U.S. at 356, 111 S.Ct. at 2778, 115 L.Ed.2d at 331–32, quoting *Reed v. Unit-*

---

dismissal of these two counts without prejudice. See Plaintiffs' Memorandum of Law in Support of Their Opposition to Defendant Shop–Rite Su-

permarkets, Inc.'s Motion to Dismiss and/or For Summary Judgment, pp 2–3. See also the Court's Order of Dismissal issued this day.

ed Transportation Union, 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989). See also *United Paperworkers International Union and Its Local 340 v. Specialty Paperboard, Inc.*, 999 F.2d 51, 53 (2d. Cir.1993), and *Derwin v. General Dynamics Corporation*, 719 F.2d 484, 487 (1st Cir.1983).

■ *Lampf* sets forth a vertical hierarchy: the state limitations period is the rule, federal limitations period the exception. If a court finds an analogous state limitations period, it should be used as long as it is not at odds with the federal substantive law. *Lampf*, 501 U.S. at 355–56, 111 S.Ct. at 2778, 115 L.Ed.2d at 331. A court may go directly to federal law, according to *Lampf*, only when Congress has provided an express limitations period for correlative remedies within the same enactment. *Lampf*, 501 U.S. at 362, 111 S.Ct. at 2781–82, 115 L.Ed.2d at 335–36. See also *United Parcel Service v. Mitchell*, 451 U.S. 56, 68, n. 4, 101 S.Ct. 1559, 1567 n. 4, 67 L.Ed.2d 732 (1981). No such correlative limitation period exists within WARN. Accordingly, an analogous federal limitations period might apply in the present action only if an analogous state limitations period would frustrate or undermine the goals of WARN.

Defendant, however, *begins* its analysis by arguing that the federal NLRA, 29 U.S.C. § 160(b), is more analogous to WARN than any available state limitation periods. Although conceding that the "fit" need not be perfect, Defendant nonetheless argues that the NLRA's six-month statute of limitations should apply. While the Defendant inverts the required approach, the Court addresses the Defendant's points at this stage in its own analysis, if for no other reason than two circuit courts of appeals have adopted the NLRA's six-month statute of limitations. See *Halkias v. General Dynamics Corp.*, 31 F.3d 224 (5th Cir.1994) (Wisdom, J., dissenting), *reh'g granted*, and *United Mine Workers of America, AFL–CIO v. Peabody Coal Co.*, 38 F.3d 850 (6th Cir.1994). The Sixth Circuit and the majority in the Fifth Circuit parted ways with the Second and Third Circuits, both of which previously rejected the NLRA analogy and adopted analogous state statutes of limitations. See *United Paper-*

workers International Union and Its Local 340 v. Specialty Paperboard, Inc., 999 F.2d at 53, and *United Steelworkers of America, AFL–CIO–CLC v. Crown Cork & Seal Co.*, 32 F.3d 53 (3d Cir.1994), *cert. granted* —— U.S. ——, 115 S.Ct. 715, 130 L.Ed.2d 622. See also *Wallace v. Detroit Coke Corp.*, 818 F.Supp. 192 (E.D.Mich.1993) (statute of limitations governing action under WARN is Michigan's six-year statute of limitations for breach of contract), and *Automobile Mechanics' Local 701 v. Santa Fe Terminal Services, Inc.*, 830 F.Supp. 432 (N.D.Ill.1993) (NLRA's six-month limitation period does not apply).

■ After analyzing the "fit" of the NLRA with WARN, this Court finds that the purpose of the NLRA is not so identified with the purpose or structure of WARN as to require the acceptance of NLRA's restrictive six-month statute of limitations. The Court, therefore, disagrees with the majority's ruling in *Halkias*, favoring instead Judge Wisdom's dissent which determined that the NLRA six-month limitation ought not be borrowed. The NLRA's six-month statute of limitations is no more analogous to WARN claims than the state limitations period which this Court recommends. The policies and litigation practicalities underlying WARN are best served by a statute of limitations period longer than six months. And, because Congress was silent on the subject, the Court has determined what state limitations period appropriately applies.

Although Defendant argues that the NLRA and WARN are similar because both acts affect workers, the NLRA applies only to unions and their trained representatives, protecting the right to collective bargaining. 29 U.S.C. § 151. The WARN Act, on the other hand, applies to all employees whether unionized or not, and has no direct relationship to collective bargaining. The Court in *Wallace v. Detroit Coke Corporation*, 818 F.Supp. at 196 stated the following:

> Even the legislative history dictates that WARN rights and remedies are "separate" from other employee rights found in other statutes, such as the NLRA, LMRA [Labor Management Relations Act], ERISA, and state plant closing laws. Senate Comm.Report on 5.538. June 2, 1987.

Calendar No. 129, Report 100–62, pg. 25, Leg.Hist. of S. 2527 (WARN), at 843. Furthermore, WARN sponsor, Senator Metzenbaum, said during final debate: "This bill is absolutely neutral with respect to labor law." Cong.Rec., at S. 8611–12 (June 27, 1988).

*Id.* The purpose of WARN, unlike that of the NLRA, is not to ensure labor peace but to alleviate the distress associated with job loss for both the workers and the community in which they live. 20 C.F.R. § 639.1(a) (1993). See also *United Steelworkers,* 32 F.3d at 58. This is demonstrated by the provision in the statute for causes of action for local governments as well as for individual workers. WARN has only a tangential effect on collective bargaining, "making the comparison to the NLRA a weak one at best." *United Paperworkers International,* 999 F.2d at 54.

It is not appropriate to subject employees, at a time when their jobs have been terminated, to the six-month time constraints of an act that governs collective bargaining. There is no reason to expedite the filing of WARN claims beyond the periods for analogous state causes of action. As Judge Wisdom noted, workers will not be able to direct the necessary attention to determining whether they can sue under the WARN Act: "NLRA plaintiffs are preoccupied with going back to their jobs with their company; WARN plaintiffs are preoccupied with finding a new job to replace the one they just lost." *Halkias,* 31 F.3d at 245 (Wisdom, J. dissenting). Simply put, a cause of action brought under WARN does not require an accelerated resolution. As Judge Wisdom explained, it is a "shaky premise that the policy favoring the rapid resolution of labor disputes (presumably so that everyone can get back to business) applies to a situation where the company has closed a plant (and there will be no more business)." *Halkias,* 31 F.3d at 243. This Court agrees. There

would have been no reason to require Plaintiffs in this action to have rushed to resolution within six months or have their claims lost forever. Defendant is not prejudiced by the delay. Defendant could not have planned to be rid of possible WARN claims six months after it closed its stores.[3]

In addition, unionized employees subject to the NLRA receive the benefit of legal counsel familiar with the applicable limitations periods. In fact, the union is only required to file administrative complaints. As the Second Circuit pointed out, "[t]he burden on [NLRA] complainants in pursuing a claim is minimal, justifying the short statute of limitations." *United Paperworkers International,* 999 F.2d at 55. In contrast, WARN claimants may be unrepresented and, in any case, must pursue their rights in federal court, an infinitely more burdensome and time-consuming process. See *Burnett v. Grattan,* 468 U.S. 42, 50–52, 104 S.Ct. 2924, 2929–31, 82 L.Ed.2d 36 (1984) (state limitations period for administrative action is inappropriate for federal civil rights claim; court action, with its practical difficulties for individual litigant, requires more time).

Finally, the fact that Congress borrowed from the NLRA when creating WARN is of little significance here. It is understandable that Congress would borrow concepts from a law which also operates within the larger context of employer-employee relations. *Halkias,* 31 F.3d at 246. As the court stated in *United Steelworkers,* 32 F.3d at 57, however, the mere fact that WARN touches upon issues of employment law does not dictate that a court must resort to the statute of limitations contained in the federal NLRA.

The Defendant has not convinced the Court that this action should fall under the limited circumstances which would allow a federal limitations period to apply, *United Paperworkers International,* 999 F.2d at 53–54, particularly since an analogous state statute of limitations is both available and appro-

---

**3.** In contrast, the Supreme Court approved the adoption of the NLRA's six-month statute of limitations for suits filed under the Labor Management Relations Act, 29 U.S.C. § 185, because the case was directly related to collective bargaining agreements. The Supreme Court borrowed a federal limitations period due to the national concern for stable bargaining relationships and the finality of private settlements. *DelCostello,* 462 U.S. at 171, 103 S.Ct. at 2294. Even then, the "... courts have been reluctant to consider every suit in which a union plays a part as requiring a federal limitations period". *United Paperworkers,* 999 F.2d at 53.

priate. After considering the issue, the Court recommends that WARN lawsuits in Massachusetts should be governed by a state limitations period, adopting in large measure the reasoning of the Second Circuit Court of Appeals in *United Paperworkers International* and the Third Circuit Court of Appeals in *United Steelworkers.* Such an outcome is also required by both *Lampf* and *DelCostello.*[4]

## 2. Application of state limitations period

In choosing which state statute of limitations period to borrow and apply, the Court has addressed three factors. First, how close an analogy can be drawn between the chosen statute and WARN. Second, how close are the policy implications behind the selected statute to those of WARN. Finally, how well do the practicalities of the chosen state statute of limitations apply to actions under WARN. For the reasons set forth below, the Court has determined that the six-year statute of limitations for contract actions in Massachusetts provides the most appropriate analogy to WARN. M.G.L. ch. 260, § 2.[5]

### a. Analogy

■■ As discussed, the general rule in determining a limitations period is to borrow the closest applicable state statute of limita-

tions. Massachusetts, unlike the states whose statutes were searched by the Second, Third, Fifth and Sixth Circuit Courts of Appeals, has what might be considered the most analogous statutes at the state level: (1) the plant closings law, M.G.L. ch. 151A, § 71A et seq., which requires prior notification by the employer to the Department of Employment and Training and creates a system of re-employment assistance and continued health insurance benefits; and (2) the "Tin Parachute law," M.G.L. ch. 149 §§ 183–184, which provides severance benefits to displaced employees whose jobs end due to transfers of control or ownership of their employers. Unfortunately, the plant closing law, which allows for enforcement by the Commissioner of the Department of Employment and Training, contains no statute of limitations. And the Tin Parachute Law, which also has no limitations period, has been pre-empted by ERISA. See *Simas v. Quaker Fabric Corp. of Fall River,* 6 F.3d 849 (1st Cir. 1993).[6]

This lack of statutes of limitation in otherwise analogous Massachusetts employment programs is significant to the degree that the open-ended period in which claims may be made implies that a short statute of limitations period would be an inappropriate standard to borrow. Considering that WARN has no specified statute of limitations either,

---

**4.** Having rejected the NLRA as an appropriate statute from which to borrow, the Court could simply recommend that Defendant's Motion to Dismiss be denied, since Plaintiff's action would be considered timely under any of the other analogous time periods which the Court has been asked to consider. Such an approach was followed in both *United Steelworkers,* 32 F.3d at 61, and *Automobile Mechanics' Local No. 701 v. Santa Fe Terminal Services, Inc.* 830 F.Supp. 432, 437 (N.D.Ill.1993). See also *Derwin v. General Dynamics Corp.,* 719 F.2d at 490, n. 6. The Court, however, feels constrained to choose. Both employers and employees can then be forewarned, adjusting their actions accordingly.

**5.** A possibly analogous limitation period is the four-year federal residual limitations period that Congress recently enacted for all federal statutes that do not include their own limitations period. 28 U.S.C. § 1658. However, § 1658 only applies to civil actions "arising under an Act of Congress enacted after the date of the enactment of this section." Due to the fact that WARN was enacted over two years before its passage, § 1658 does

not directly control here. Congress plainly intended that § 1658 not be applied retroactively. See Siegel, David D., Practice Commentary, at 28 U.S.C. § 1658, West Publishing Co.1994. As discussed by Siegel, the pro forma "effective date" language in 28 U.S.C. § 1658 should arguably be subordinated to the crux of the statute's intention, namely, to apply a four year statute of limitations to the date a claim "accrues", regardless of the enactment date of the federal law at issue. However, as Siegel acknowledges, the statute does not do that. If nothing else, § 1658 simply implies that several years provide a fairer limitations period than several months.

**6.** ERISA has statutes of limitations ranging from three to six years for actions alleging breach of fiduciary duties. 29 U.S.C. § 1113. Prior to the adoption of 29 U.S.C. § 1113, Judge Zobel, when looking for a Massachusetts state statute of limitations most analogous to ERISA, chose the six year period applicable to contract actions. *Greene v. K–Mart Corporation Employee's Retirement Pension Plan,* 1986 WL 15473 (D.Mass. 1986).

the Court believes it would be unfair to current and potential claimants to borrow a short limitations period, whether state or federal. Plaintiffs in the present action obviously had no prior warning of any applicable limitations period they were required to meet.

In the absence of a limitations period, Plaintiffs urge the Court to adopt various periods, all of which are longer than the six-month NLRA limitations period urged on the Court by the Defendant. Plaintiffs first suggest a three-year statute of limitations since a WARN claim may be akin to a tort-based employment claim for wages and benefits.[7] Alternatively, Plaintiffs suggest a six-year statute of limitations period applicable to a contract-based employment termination. Plaintiffs also refer to the ERISA limitations periods of six years for "benefits" claims and three years for "retaliation" claims. Defendant asserts, in response, that WARN neither confers contractual rights nor creates an action in tort. Defendant offers no alternative other than the NLRA.

The Second Circuit, when addressing this issue, applied the Vermont contract statute of limitations. *United Paperworkers International* 999 F.2d at 56. The parallels between WARN and contract actions were many and are applicable here. First, claims for workers compensation, to which the six-year contract statute of limitations applied in Vermont, shared with WARN "an interest in protecting workers from unexpected joblessness or loss of hours." *Id.* Second, in contract actions, unlike tort actions, negligence of the employer need be shown to entitle an employee to benefits: "... the employees need only show that the plant closed, and that they were not forewarned." *Id.* Compare *Giuffre v. Delta Air Lines, Inc.*, 746 F.Supp. 238, 240–241 (D.Mass.1990) (claim for retaliatory discharge is most analogous to a tort action). Third, like contract actions, "WARN actions in some sense compensate workers and communities for their reliance interests." *Id.* Finally, "[e]specially in light of Congress' characterizations of the WARN claim as a civil action, ... the contract statute of limitations [is] sufficiently analogous." *Id.* See also *Frymire v. Ampex Corp.*, 821 F.Supp. 651 (D.Colo.1993) (applying contract statute of limitations to WARN claims) and *Wallace v. Detroit Coke Corp.* 818 F.Supp. 192 (E.D.Mich.1993) (applying contract statute of limitations to WARN claims).[8]

### b. Policy

It does not appear that WARN requires any particular degree of uniformity. The value of uniformity is much greater under the NLRA than under non-collective bargaining statutes. *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 701, 86 S.Ct. 1107, 1110–11, 16 L.Ed.2d 192 (1966). National uniformity is also less important for WARN because Congress did not intend for it to promote the formation of collective agreements in the manner than it intended for the NLRA. *DelCostello*, 462 U.S. at 162, 103 S.Ct. at 2289. See also legislative history cited in *Wallace v. Detroit Coke Corporation*, 818 F.Supp. at 196. WARN is instead focused on what happens when the employer-employee relationship terminates and there is nothing left for which to bargain.

Nor is it necessary to impose a limitations period that provides for a prompt resolution of a labor dispute, since there need not be a prompt resolution of a claim for benefits once a plant has closed. In fact, for policy reasons, the best method to uphold the objectives of WARN (giving workers and communities advance notice of impending difficult times) is to use an extended statute of limitations. An extended period will ensure that companies give the requisite advance notice to its workers. The purpose of the extended

---

7. Claims by employees for damages arising out of employment termination have been variously categorized as wrongful discharge actions, breach of the implied covenant of good faith and fair dealing suits, and contract claims. Massachusetts courts have held that the statute of limitations associated with these claims are three or six years. See *Pagliuca v. City of Boston*, 35 Mass.App.Ct. 820, 626 N.E.2d 625 (1994).

8. Indeed, even though it rejected the rationale of both the Second and Third Circuits, the Fifth Circuit noted as follows: "The breach of contract period may come closer than any other Texas period. And, if nothing else, utilizing it would create some semblance of uniformity, given the Second Circuit's borrowing a state contract limitations period." *Halkias*, 31 F.3d at 235, n. 24.

statute of limitations in ERISA is as applicable here: "the six year time period reflects Congress' determination to impress upon those vested with control of pension funds the importance of the trust they hold. Thus, Congress evidently did not desire that those who violate the trust could easily find refuge in a time bar." *Brock v. Nellis,* 809 F.2d 753, 754 (11th Cir.1987), *cert. dismissed,* 483 U.S. 1057, 108 S.Ct. 33, 97 L.Ed.2d 821 (1987), quoted in *New York State Teamsters Council Health and Hospital Fund v. Estate of DePerno,* 816 F.Supp. 138, 143–144 (N.D.N.Y.1993).

### c. *Litigation Practicalities*

Finally, the Court has considered whether litigation practicalities favor the choice of a short limitations period. As the court in *United Paperworkers International* stated, forum shopping concerns are not great due to the fact that a plant closing is limited to a single site of employment. Thus, workers will file WARN actions where the injury took place or where the employer does business. *United Paperworkers International,* 999 F.2d at 56. WARN actually diminishes the threat of forum shopping because choice of law rules dictate that the law of the layoff site would be chosen regardless of where the workers filed suit. *Automobile Mechanics' Local No. 701 v. Santa Fe Terminal Services, Inc.,* 830 F.Supp. at 436. Concerns with regard to national uniformity have already been addressed by the Court.

### 3. *Conclusion*

It should be noted that this analysis is not directed at Defendant Shop–Rite, which was in fact aware of WARN and did try, although fail, to fully comply with its technical prior notice requirements. Rather, the analysis is generic, made necessary by having to "borrow" a statute of limitations. As such, the Court had to address questions of Congres-

sional policy, statutory construction and legislative intent. The answers to such questions do not necessarily implicate the specific motivations or policies of Shop–Rite.

There is not always an obvious state law choice for application to a specific federal cause of action, but resorting to state law remains the norm for borrowing limitations periods. *DelCostello,* 462 U.S. at 171, 103 S.Ct. at 2294. The Court finds the application of the Massachusetts six-year statute of limitations for contract claims appropriate. M.G.L. ch. 260 § 2. An action brought pursuant to WARN is essentially an action for benefits created by an employer's termination of employment. As such, it closely resembles an action for a common-law claim for breach of contract. In addition, the limitations period for contract-based employment termination is not at odds with WARN's substantive provisions. Although the fit may not be perfect, the Court is secure in advising the application of a six-year limitations period to an action brought under the WARN Act in Massachusetts. Accordingly, since Plaintiffs have filed their claims in a timely manner, Defendant's Motion to Dismiss should be denied.[9]

### B. *Summary Judgment Motion*

Since the Court has determined that a six-year statute of limitations should apply, there is little difficulty in recommending that Plaintiff Siniscalchi's Motion for Partial Summary Judgment be granted. Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). See *Mendes v. Medtronic, Inc.,* 18 F.3d 13, 15 (1st Cir.1994); *Commercial Union Ins. v. Walbrook Ins. Co.,* 7 F.3d 1047, 1050 (1st Cir.1993) (citing *Mesnick v. General Electric Co.,* 950 F.2d 816 (1st Cir.1991), *cert. denied,*

---

**9.** The Court echoes here the caveat of the Second Circuit:

We must emphasize, however, that this determination does not mean that WARN is a contract action and that it should be found to be an implied term in every employment contract. We are cognizant of the concerns that would raise. "If the Court were to read an implied contract into the language of the ... Act, there

is no reason why every statute that grants a right should not be read that way. The effect would be widespread—hundreds of statutes would be interpreted to create legally enforceable contract rights." *Russell v. District of Columbia,* 747 F.Supp. 72, 79 (D.D.C.1990), *aff'd without op.,* 984 F.2d 1255 (D.C.Cir. 1993).

*United Paperworkers,* 999 F.2d at 56.

504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)). The facts must be viewed in the light most favorable to the non-moving party. *Commercial Union Ins. v. Walbrook,* 7 F.3d at 1050. The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic,* 18 F.3d 13, discussing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

A "genuine" issue is one that only a finder of fact can properly resolve because it may reasonably be resolved in favor of either party and a "material" issue is one that affects the outcome of the suit. *Collins v. Martella,* 17 F.3d 1, 3 n. 3 (1st Cir.1994), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 250, 106 S.Ct. 2505, 2510, 2511, 91 L.Ed.2d 202 (1986). Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact. *Horta v. Sullivan,* 4 F.3d 2, 11 (1st Cir.1993). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Navigation Co.,* 974 F.2d 221, 223 (1st Cir.1992). Appellate review of summary judgment is plenary, since the standard of review requires the trial court to make a legal determination rather than to engage in fact-finding. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990).

■■■ WARN mandated Defendant to notify Plaintiff Siniscalchi sixty days prior to closing the store in which she worked. It is beyond dispute that Defendant provided less than the requisite sixty-days notice. Nor do any of the conditions under which Defendant may reduce the notification period, pursuant to 29 U.S.C. § 2102(b), apply here. Compare *Wallace v. Detroit Coke Corporation,* 818 F.Supp. 192, 197–198 (E.D.Mich.1993). Shop–Rite did not provide actual notice of the store closing to Plaintiff Siniscalchi until November 3, 1992, despite the fact that the written notice was dated November 2, 1992. Defendant has not presented any evidence that Siniscalchi was notified of her termination before November 3, 1992. Siniscal-

chi's employment terminated on December 31, 1992. Shop–Rite's notice to Siniscalchi was deficient by two days. While a two-day deficiency may be considered minimal, it is still deficient. In fact, Defendant's unemployment notice to Siniscalchi indicated that her pay through December 31, 1992, was "in lieu of the WARN Act." See Exhibit 2 of Plaintiff Siniscalchi's Affidavit (Docket 09). Considering the language of the statute and the undisputed facts, Plaintiff is entitled as a matter of law to the full measure of the benefits of WARN. Employers who violate the statute's notice provisions must pay aggrieved employees "back pay for each day of violation." 29 U.S.C. § 2104(a)(1)(A).

In this regard, Defendant asserts that it is unclear whether the sanction applies to *work* days rather than *calendar* days. As a result, Defendant asserts a material issue of fact exists, i.e., whether the two days for which Ms. Siniscalchi alleges Defendant was in violation of WARN were days on which she would have worked.

■■■ First, this Court finds that it is calendar days, rather than work days which are the applicable standard, agreeing in particular with the reasoning in *United Steelworkers v. North Star Steel Co.,* 5 F.3d 39 (3d Cir. 1993), *cert. denied* —— U.S. ——, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994). See also *Joshlin v. Gannett River States Publ. Corp.,* 840 F.Supp. 660, 663 (E.D.Ark.1993). Compare *Carpenters Dist. Council v. Dillard Dept. Stores,* 15 F.3d 1275, 1283–86 (5th Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 933, 130 L.Ed.2d 879 (1995); *Washington v. Aircap Industries, Inc.* 860 F.Supp. 307, 311–13 (D.S.C.1994); and *Jones v. Kayser–Roth Hosiery, Inc.* 748 F.Supp. 1292, 1296 (E.D.Tenn. 1990). It is undisputed that the days of violation are calendar days rather than work days. See 20 C.F.R. § 639.1 (1992). In fact, in an early decision under the WARN Act, Magistrate Judge Collings in this District issued a writ of attachment under WARN on the assumption that each calendar day constituted a day of violation. See *United Elec., Radio & Mach. Workers v. Maxim, Inc.,* 1990 WL 66578 at 4 (D.Mass.1990).

Second, Defendant precludes the necessity of addressing the avowed factual issue since

its stores were unquestionably closed on December 31, 1992, in accord with its notice to employees. We cannot know, then, if Ms. Siniscalchi would have worked those additional two days. In fact, Defendant concedes that it violated WARN since its final unemployment notice to Ms. Siniscalchi indicated that the payments were "in lieu of the WARN Act." This notice could only have been in lieu of WARN if Defendant understood that its actual store closings at the end of December would fall short of the 60–day prior notice requirement, if only by two days. The parties are able to calculate the benefits due for the additional days.[10]

The Court also considered *sua sponte* recommending summary judgment on Count III of Plaintiffs' amended complaint as well. Although Plaintiffs did not include Count III in their motion for partial summary judgment, it is identical to Count I, except that it involves every other Plaintiff. It became evident at the hearing on the parties' motions that the same facts which were not in issue with regard to Ms. Siniscalchi did not appear to be in issue with regard to the other Plaintiffs. Although the Court has the power to order summary judgment on its own initiative, *Jardines Bacata, Ltd. v. Diaz–Marquez*, 878 F.2d 1555, 1560 (1st Cir.1989), that power is "invariably tempered by the need to ensure that the parties are given adequate notice to bring forward their evidence." *Stella v. Town of Tewksbury, Massachusetts*, 4 F.3d 53 (1st Cir.1993). See also *Celotex Corp. v. Catrett*, 477 U.S. at 326, 106 S.Ct. at 2554, 91 L.Ed.2d 265, and *Bonilla v. Nazario*, 843 F.2d 34, 37 (1st Cir.1988). Accordingly, the Court invites the Plaintiff to file a

motion for partial summary judgment on Count III, Defendant having time to answer in accord with Fed.Rule Civ.P. 56 and Local Rules 7.1 and 56.1.

## IV. CONCLUSION

For the above reasons, this Court recommends the Defendant's Motion to Dismiss be DENIED and the Plaintiffs' Motion for Partial Summary Judgment on Count I of Plaintiffs' Amended Complaint be allowed.[11]

---

**10.** Plaintiff Siniscalchi and the group Plaintiffs also make contractual claims under Count V of their complaint for certain employment benefits, the rights for which may depend on the precise date of termination. Count V is not addressed in any of the parties' motions. Accordingly, the Court does not address whether the 60–day prior notice period of WARN creates any rights affecting Plaintiffs' contractual cause of action. See also footnote 9, *supra*.

**11.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of

this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See *U.S. v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *U.S. v. Vega*, 678 F.2d 376, 379 (1st Cir.1982). See also *Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985).